ORIGINAL



**BEFORE THE**

**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: | ) MDL DOCKET NO. *302 CV 2147-R* |
| PAXIL LITIGATION | ) |
| | ) |

PLAINTIFFS' MEMORANDUM IN SUPPORT OF TRANSFER, COORDINATION AND/OR CONSOLIDATION PURSUANT TO 28 U.S.C. §1407

I.
INTRODUCTION

GlaxoSmithKline ("GSK") has been sued in some thirteen actions – six of which were filed as putative class actions – in eleven United States District Courts across the country. Plaintiffs in the action styled *Preston Leonard and Janelle Chevarie v. GlaxoSmithKline Corporation,* Case No. 03-10245-MLW, ("Movants" or "*Leonard*" action) now respectfully move to transfer all of these actions to the United States District Court for the Central District of California or, in the alternative, to the United States District Court for the Southern District of Illinois for coordinated and/or consolidated pretrial proceedings under 28 U.S.C. §1407 and Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation.[1]

The numerous lawsuits assert the same or substantially similar claims against GSK under

---

[1] On July 31, 2003, during the Initial Scheduling Conference in the *Leonard* action, Magistrate Judge Robert B. Collings urged the parties to consider transferring all the Related Actions to a district court for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407.

1

state laws and common law.  Transfer, coordination and/or consolidation of those actions – and any future actions – are essential to enable the judicial system to handle the cases efficiently, to manage potentially duplicative discovery, to prevent inconsistent pretrial rulings, and to conserve the resources of the parties, their counsel and the judiciary.  The Central District of California is the most appropriate transferee forum because the first action was filed there, and is the most advanced case in terms of progress which has been achieved in the litigation.  In the alternative, Movants believe that the Southern District of Illinois is an appropriate forum for this litigation. The Southern District of Illinois is not currently overtaxed with other multidistrict dockets and possesses the necessary resources to be able to devote the substantial time and effort to pretrial matters that this complex docket is likely to require.  Moreover, East St. Louis, the main courthouse location for the Southern District of Illinois, is centrally located for the parties and witnesses and is well served as a transportation hub, offering direct flight service extensively throughout the United States.

## II.
## FACTUAL BACKGROUND

The Plaintiffs in the *Leonard* action and in the actions listed on the accompanying Schedule of Actions ("Related Actions") are brought against the same Defendant GSK.  As is more fully alleged in the *Leonard* action and throughout the Related Actions, the actions are brought on behalf of former and/or present individuals who were prescribed and took the antidepressant prescription drug Paxil (generically known as paroxetine) which was introduced into the U.S. market on December 29, 1992, and who suffered and/or continue to suffer from dependency/withdrawal symptoms following reduction and/or termination of their Paxil use. GSK manufactured, promoted, marketed, advertised, distributed and sold the drug Paxil.  Each of these actions allege the same or substantially the same course of conduct against the same Defendant and allege the same or substantially identical violations of laws – fraud/deceit, negligence, strict liability, breach of implied and express warranty, and violations of unfair trade practices and related consumer protection statutes.  Further, in each action, Plaintiffs and

2

members of the classes seek damages, including compensatory and punitive damages, disgorgement, restitution, refunds as well as injunctive and other equitable relief.

As of the date of this motion, at least 13 lawsuits have been filed in 11 different United States District Courts against GSK. Those suits fall into three categories, all of which are interrelated:  6 putative class actions, filed in 6 different districts; 6 mass joinder actions, filed in 4 different districts; and 1 individual action.  All the actions are brought on behalf of individuals who ingested the prescription drug Paxil and who, after December 29, 1992, suffered or continued to suffer from withdrawal symptoms following reduction or termination of their use of dosage.

Transfer, coordination and/or consolidation of these actions, and any other subsequently filed related actions, will serve the interests of justice by providing a single forum in which the legal merits of GSK's conduct can be adjudicated.  Given the relative plethora of medical drug and device cases which this Panel has coordinated in recent years, there appears little doubt about the propriety of coordinating and/or consolidating the litigation in this case.[2]  Movants request that the Related Actions, and all "tag along" actions that may be brought to the Panel, be transferred to a single district.  The Movants propose transfer to the Central District of California or the Southern District of Illinois.

### III.
### ARGUMENT

This Panel should exercise its authority under 28 U.S.C. § 1407 to transfer all the Related Actions pending against GSK to the Central District of California, or in the alternative, to the Southern District of Illinois for coordinated and/or consolidated pretrial proceedings.  These

---

[2] See, *e.g., In re Silicone Gel Breast Implants Product Liability Litigation*, MDL Docket No. 926, *In re Temporomandibular Joint Implants Products Liability Litigation*, MDL Docket No. 1001, *In re Copley Pharmaceutical Albuterol Products Liability Litigation*, MDL Docket No. 1013, *In re Orthopedic Bone Screw Products Liability Litigation*, MDL Docket No. 1014, *In re Telectronics Pacing Systems, Inc. Accufix Atrial "J" Leads Products Liability Litigation*, MDL Docket No. 1057, *In re Diet Drug Products Liability Litigation*, MDL Docket No. 1203, *In re St. Jude Medical Products, Inc. Product Liability Litigation*, MDL Docket No. 1396, *In re Inter Op Hip Prosthesis Products Liability Litigation*, MDL Docket No. 1401, *In re Phenylpropanalomine Products Liability Litigation*, MDL Docket No. 1407.

cases indisputably share "one or more common questions of fact," as § 1407 requires. Indeed, the factual allegations in all the suits – concerning purported "misrepresentations" or "omissions" about Paxil's propensity to cause dependence/withdrawal symptoms when users attempt to reduce or terminate their dosage – are virtually identical.

Transfer for pretrial purposes clearly would serve "the convenience of parties and witnesses" and would "promote the just and efficient conduct of the actions," as § 1407 also requires. Because all of the various Plaintiffs are members of the putative class actions or mass joinders (with the exception of the one individual action pending in the Southern District of California) and assert similar factual issues and legal claims, coordination and/or consolidation would streamline the pretrial process, facilitate coordinated discovery, prevent inconsistent rulings on substantive or procedural pretrial motions, avoid duplication, and save considerable time, effort and expense for the parties and the judiciary.

The Central District of California is the most appropriate forum for transfer, coordination and/or consolidation because the first filed class action was filed there, and it is the most advanced case in terms of discovery and motion practice. In the alternative, Movants believe that the Southern District of Illinois is an appropriate forum for this litigation.

## A.
## THE CASES INVOLVE COMMON QUESTION OF FACT AND SHOULD BE TRANSFERRED UNDER § 1407.

The litmus test of transferability and coordination under § 1407 is the presence of common questions of fact. *In re Fed. Election Campaign Act Litigation*, 511 F. Supp. 821, 823 (J.P.M.L. 1979). Common questions are presumed "where two or more complaints assert comparable allegations against identical defendants based on similar transactions and events." *In re Air West Inc. Securities Litigation*, 506 F. Supp. 651, 654-655 (J.P.M.L. 1981); *see also In re Cuisinart Food Processor Antitrust Litigation*, 506 F. Supp. 651, 654-655 (J.P.M.L. 1981).

All of the actions against GSK involve the same basic allegations that GSK *(i)* actively deceived and continues to deceive the Plaintiffs and general public by representations in

4

promotional materials, written labeling, oral communications and advertising stating, for example, that Paxil's withdrawal symptoms are rare and mild, that Paxil is not habit forming, that it is not addictive, that it does not cause dependency, and that it does not cause withdrawal symptoms if dosage is tapered; *(ii)* knowingly claimed and continues to claim that Paxil's withdrawal problems are relapse; *(iii)* knowingly misrepresented and continues to misrepresent that its clinical trials and investigations adequately tested for withdrawal symptoms; *(iv)* has failed to inform the medical community that a significant number of individuals taking Paxil during both domestic and foreign clinical trials experienced dependency/withdrawal symptoms; and *(v)* has over-promoted Paxil in order to increase its sale at the expense of revealing the truth and adequately warning that Paxil can cause withdrawal/dependence.

All of the Complaints thus raise many overlapping (if not identical) questions of law and fact, including *(i)* whether GSK made any misrepresentations or omissions to Plaintiffs about the nature of Paxil in its labeling and promotion of the drug; *(ii)* whether GSK properly and adequately warned Plaintiffs that Paxil can cause dependency/withdrawal symptoms; *(iii)* whether Paxil causes dependency/withdrawal symptoms and whether those symptoms can be frequent and severe; *(iv)* whether Plaintiffs took Paxil and experienced dependency/withdrawal symptoms; *(v)* whether Paxil can cause dependency/withdrawal symptoms, even if, the dosage is tapered; *(vi)* whether GSK has and continues to falsely and fraudulently misrepresent in its advertisements, promotional materials and other materials, among other things, the safety and side effects of Paxil; and *(vii)* what and when GSK knew about these problems, and what it did or failed to do in response.

These common factual and legal issues will dominate pretrial activity in the pending actions. The Panel should prevent potentially inconsistent pretrial rulings, such as rulings on preliminary injunctive relief or summary judgement. "The likelihood of motions for ... dismissal or summary judgement in [multiple] actions ... makes Section 1407 treatment ... necessary to prevent conflicting rulings and conserve judicial efforts." *In re TransOcean Tender Offer Securities Litigation*, 415 F. Supp. 382, 384 (J.P.M.L. 1976); *see also In re IKON Office*

5

*Solutions, Inc. Securities Litigation,* No. 1318, 1999 U.S. Dist. 1977, at *2 (J.P.M.L. Dec. 2, 1999) (ordering transfer to "prevent inconsistent pretrial rulings").

Coordination and/or consolidation also is essential to prevent duplicative discovery, particularly of GSK's employees and officers and the experts for both sides, including expert discovery. The practical impact of the actions' similarities is that discovery will substantially overlap with that undertaken in other actions. For example, the *Leonard* action asserts much of the same factual allegations against GSK as asserted by the Plaintiffs in *In re Paxil Litigation.* It is thus inevitable that the Plaintiffs in the *Leonard* action will demand many of the same documents and depositions that Plaintiffs in *In re Paxil Litigation* have been and will continue to seek. To place the *Leonard* action on a separate track thus would do nothing but guarantee that documents will have to be produced twice and witnesses will have to be deposed twice. In short, pretrial coordination and/or consolidation is needed to prevent expensive and time-consuming duplication of discovery, which would unnecessarily burden the parties and the courts. *See e.g., In re Reliance Acceptance Group, Inc. Securities Litigation,* No. 1304, 1999 U.S. Dist. LEXIS 19205, at *2-*3 (J.P.M.L. Dec. 9, 1999).

The Movants do not necessarily contend — and the Panel need not decide — that the putative class actions, the mass joinder actions, and the individual action all should be *consolidated* into a single proceeding, with one Consolidated Complaint. The only issue here is whether all of those cases should be *coordinated* in a single court. Questions about consolidation as opposed to coordination are best left to the transferee court, which can decide those issues once the Panel has transferred the cases under § 1407.

## B.
## THE CENTRAL DISTRICT OF CALIFORNIA
## IS THE MOST APPROPRIATE TRANSFEREE DISTRICT, OR IN THE
## ALTERNATIVE, THE SOUTHERN DISTRICT OF ILLINOIS

The Central District of California is the most appropriate forum for the pretrial coordination and/or consolidation of all of the Related Actions. The first filed action – *In re*

6

*Paxil Litigation* – has been pending in that District for over two years, so coordination and/or consolidation in that forum would cause the least disruption. Moreover, other relevant considerations also favor a transfer to that District.

Of all the actions pending against GSK – *In re Paxil Litigation* which is assigned to United States District Court Judge Mariana R. Pfaelzer – is the most advanced case in terms of completed discovery and motion practice. Over the course of the litigation, Plaintiffs have actively prosecuted the litigation. Specifically, *In re Paxil* has had the following significant events: (1) Plaintiffs' Consolidated Amended Complaint; (2) GSK's Answer to the Consolidated Amended Complaint; (3) Plaintiffs' Motion for Preliminary Injunction (initially granted, subsequently vacated on reconsideration); (4) Plaintiffs' Motion for Class Certification of a Nationwide Class (motion denied); (4) Plaintiffs' Motion for Class Certification of a California-only Class (motion denied); (5) Taking numerous depositions of GSK representatives and third party witnesses and defending depsitions of plaintiffs; (6) Propounding documents requests, interrogatories and requests for admissions to GSK; (7) Plaintiffs' Motion to Compel Discovery (granted); and (8) Documents produced, Interrogatories answered and review of voluminous documents produced by GSK.

Movants believe that Judge Pfaelzer of the Central District is in the best position to manage the pretrial proceedings effectively and efficiently. Judge Pfaelzer is intimately familiar with the facts of the case. The parties have been before Judge Pfaelzer nearly a half dozen times and have argued four significant motions. While there are a number of able jurists, Movants believe that Judge Pfaelzer has the necessary experience and ability to steer this complex litigation on a steady and expeditious course.

Moreover, a § 1407 transfer to California would not unfairly prejudice Plaintiffs who filed their cases in other Districts. Those cases would be transferred solely for *pretrial* proceedings; the Plaintiffs presumably would return to their home courts for trial. Nor would Plaintiffs need to travel to California for depositions, which could be taken in their home states. *See e.g., In re IKON Office Solutions, Inc. Securities Litigation*, 1999 U.S. Dist. LEXIS 19077, at

*3 ("Since Section 1407 transfer is for pretrial proceedings only, there is usually no need for the parties and witnesses to travel to the transferee district for depositions or otherwise").

A transfer to the Central District (located in the City of Los Angeles) also would not inconvenience the attorneys. "The judicious use of liaison counsel, lead counsel and committees of counsel will eliminate the need for most counsel ever to travel to the transferee district." *In re Alliance Equip. Lease Program Securities Litigation,* 1999 U.S. Dist. LEXIS 17148, at *4. In fact, many of Plaintiffs' attorneys are located in California. GSK is represented by the law firm of King & Spalding in each of the Related Actions. The attorneys at King & Spalding have entered *pro hac vice* appearances in the Central District of California. Moreover, additional attorneys for GSK would not be required, because – under J.P.M.L. Rule 1.4 – out-of-state counsel need not obtain local counsel in California to handle transferred cases. Indeed, GSK's counsel have already appeared before the Court in Los Angeles on several occasions.

In the alternative, Movants propose that the Southern District of Illinois is an appropriate transferee court for the following reasons: (1) the docket of the Sourthern District of Illinois will permit efficient and effective action on these proceedings; (2) the Southern District of Illinois is not the home of GSK's headquarters; and (3) the Southern District of Illinois, through the City of St. Louis has transportation access to the entire United States, is centrally located, and is an excellent locale for the geographical centralization of these proceedings.

This Panel ordered the proceedings in *In re Phenylpropanalomine Products Liability Litigation,* MDL Docket No. 1407, coordinated and consolidated in the Western District of Washington. In doing so, this Panel noted as follows:

> Given the range of locations of parties and witnesses in this docket, the geographic dispersal of current and anticipated constituent actions, and the wide array already of suggested transferee districts, it is clear that any of a large number of districts would qualify as an appropriate transferee forum for this litigation nationwide in scope. In concluding that the Western District of Washington is the most appropriate forum for this docket, we note that centralization in this district permits the Panel to effect the Section 1407 assignment to a major metropolitan court that: i) is not currently overtaxed with other multidistrict dockets, and ii) possesses the necessary resources to be able to devote the substantial time and effort to pretrial matters that this complex docket is likely to require.

Order, August 28, 2001, MDL Docket 1407.

8

The caseload of the Southern District is not overtaxed by other MDL dockets. As of 2002, there were no pending MDL cases in the Southern District of Illinois[3]. Additionally, the Southern District of Illinois possesses the necessary resources to manage this litigation effectively and efficiently. Statistics from the Judicial Caseload Profile Report,[4] comparing the proposed District Courts to all U.S. District Courts for this MDL proceeding supports this conclusion:

| 2002 #'s | # of MDL's Pending | Pending Cases per Judge | Months From Filing to Trial- Civil | % of Civil Cases over 3 yrs. old | Ratio of Filings to Termination[6] |
|---|---|---|---|---|---|
| All District Courts | 218 (Avg. Of 2.3 per district)[5] | 471 | 21.8 | 12.8% | .939 |
| CA-Central (9th Cir) | 7 | 538 | 20.0 | 5.2% | 1.096 |
| IL-Southern (7th Cir) | 0 | 333 | 18.0 | 5.2% | 1.004 |

Moreover, transferring the Related Actions to the Southern District of Illinois is desirable as it is centrally located and is well served as a transportation hub. On time arrivals at the Lambert-St. Louis International Airport occur at the rate of 89.5% - the 4th highest of any major metropolitan airport on average in calendar year 2002.[7] Lambert-St. Louis International Airport is the 11th busiest in North America for aircraft operations and the 15th in total International.[8]

---

[3] Source: See Judicial Panel on Multidistrict Litigation, http://jpml.uscourt.gov/

[4] These statistics are for the 12 month period ending September 30, 2002; See http://uscourts.gov/cgi-bin/cmsd2002.pl

[5] There are 89 districts in the 50 states. District Courts also exist in Puerto Rico, the Virgin Islands, the District of Columbia, Guam and the Northern Mariana Islands. In total there are 94 U.S. district Courts.

[6] The Central District of California and the Southern District of Illinois actually terminated more cased than filed last year in excess of the national average.

[7] Source: http://www.independenttraveler.com and *Air Travel Consumer Report* issued in January 2003 by the Office of Aviation Enforcement and Proceedings, U.S. Department of Transportation.

[8] Source: http://www.lambert-stlouis.com/

The main courthouse for the Southern District of Illinois is located in East St. Louis, which is approximately 16 miles from Lambert-St. Louis International Airport. Additionally, transferring the Related Actions to the Central District of California is advantageous as Los Angeles International Airport is also well suited as a transportation hub and is approximately 19 miles away from the Court.

CONCLUSION

For all of the above reasons, the Panel should transfer the pending actions, as well as any related actions that might later be filed, to the United States District Court for the Central District of California, or in the alternative, to the Southern District of Illinois for coordinated and/or consolidated pretrial proceedings under 28 U.S.C. § 1407.

Dated: September 10 2003       Respectfully submitted,

WEISS & YOURMAN
Kevin J. Yourman
Zev B. Zysman
10940 Wilshire Boulevard, 24th Floor
Los Angeles, CA 90024
Telephone:  (310) 208-2800

By:    _____
Kevin J. Yourman

BAUM, HEDLUND, ARISTEI, GUILFORD & SCHIAVO
Karen A. Barth
Mary Schiavo
12100 Wilshire Boulevard, Suite 950
Los Angeles, CA 90025
Telephone:    (310) 207-3233

Donald J. Farber
LAW OFFICES OF
DONALD J. FARBER
7 Mt. Lassen Drive, Suite B-126
San Rafael, CA 94903
Telephone:    (415) 472-7181

*Attorneys for Moving Plaintiffs*
*Preston Leonard and Janelle Cheverie*